**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lloyd JONES, Defendant-Appellant.**

No. 80–7433.

United States Court of Appeals, Fifth Circuit.* Unit B

Dec. 11, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Robert Altman, Federal Public Defender, Atlanta, Ga., for defendant-appellant.

Craig Allen Gillen, Asst. U. S. Atty., Atlanta, Ga., for the U. S.

Before MARKEY **, Chief Judge, and HILL and THOMAS A. CLARK, Circuit Judges.

JAMES C. HILL, Circuit Judge:

On May 4, 1979, appellant Lloyd Jones stood before the United States District Court, Northern District of Georgia, for

** Honorable Howard T. Markey, Chief Judge for the U.S. Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.

sentencing in connection with his conviction for murder committed at the Atlanta Federal Penitentiary. Judge William C. O'Kelley addressed Jones, who appeared with counsel, to determine whether Jones wished to be heard on matters bearing upon his sentence. Jones responded:

Yes, sir. I'd like to say that, I'd like to say that I don't think you passed sentence on me, you know, like, I think, during the process of the trial that I was totally insane, you know, which I also think that you should have looked over into the matter when I told you that them people out there was threatening me and stuff, which you said you would but you never have. But now today you bring me down here to pass sentence on me. It's nothing really too much I could do about it. When you can't beat them you join them. *So, Judge O'Kelley, U. S. Attorney, Mr. Bostic, I pass sentence on you, the sentence would be death, you and all your relatives.* Now you can pass your sentence. *It is death to you, you, and you, and all your relatives by gunshot wound.* Now do as you please. I don't give a fuck if you throw the whole Empire State building at me, the whole State of Georgia.

Record, Vol. I, at 98–99 (emphasis added). For threatening the lives of Judge O'Kelley and the prosecutor, Jones was indicted and convicted under 18 U.S.C. § 1503 (1976),[1] and sentenced to five years in prison. Jones has raised six points on appeal; they range from colorable to frivolous. None is persuasive. We affirm the conviction.

## II.

Jones first asserts that his motion to dismiss the indictment should have been granted since 18 U.S.C. § 1503 does not reach in-court conduct, generally punishable as contempt under 18 U.S.C. § 401 (1976). Section 1503 was enacted in original form by the Twenty First Congress, Act of March 2, 1831, § 2, 4 Stat. 487, in an effort to curb the power of federal courts to pun-

ish contempts summarily. *Nye v. United States,* 313 U.S. 33, 47, 61 S.Ct. 810, 815, 85 L.Ed. 1172 (1941); *see* Frankfurter and Landis, *Power of Congress over Procedure in Criminal Contempts in "Inferior" Federal Courts—A Study in Separation of Powers,* 37 Harv.L.Rev. 1010, 1027 & n.76 (1924). Appellant distorts this perspective by arguing that section 1503 applies exclusively to extrajudicial threats and conduct. Ostensibly then, Jones would prefer to have been adjudged guilty of contempt summarily. Curious as this preference is, it belongs to the prosecutor. Our cases hold that sections 1503 and 401 "often overlap," and that "there is no reason to require summary contempt proceedings [under § 401] when the government wishes to proceed by indictment [under § 1503] . . . ." *United States v. Howard,* 569 F.2d 1331, 1336 n.8 (5th Cir.), *cert. denied sub nom. Ritter v. United States,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978). The indictment challenge was properly overruled.

Appellant next contends that the district court committed prejudicial error by not questioning jurors concerning remarks they may have overheard from a "sidebar" bench conference. Defense counsel at trial notified the district court of potential prejudice flowing from these conferences, and introduced two trial spectators who testified that they heard various parts of the conference, including use of the word "contempt."

To be sure, "[a] trial judge has an ever present duty to ascertain whether a jury has been affected" by matters outside the record submitted to it. *United States v. Martinez,* 604 F.2d 361, 364–65 (5th Cir. 1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). We cannot say that the district court in this case failed to discharge that duty. The court permitted defense counsel, who moved for mistrial on this basis, to call the two spectators to testify and to present argument to the court on this point. Both spectators ex-

---

1. The statute, in pertinent part, punishes one who "by threats or force . . . endeavors to influence, intimidate or impede any . . . officer in or of any court of the United States . . . in the discharge of his duty . . . ."

plained the extent of their familiarity with the case. One spectator had heard pretrial motions made outside the jury's presence, dealing with issues similar to those covered in the sidebar conferences. The other spectator, defense counsel's wife, had discussed the case with her husband. Both spectators—unlike jurors in the case—were capable of identifying key words used in the sidebar, such as "contempt," from prior experiences with the facts. We cannot say that the district court erred to defendant's prejudice by failing to interview the jurors.[2]

Jones' third contention is that the prosecutor, in closing argument twice said, "There is a presumption that people intend to do the things that they do." In a colloquy in open court before the jury, discussing appellant's objections to the first such statement, the trial judge obtained the prosecutor's agreement that no irrebutable presumption was suggested, and the prosecutor made it clear that he was not suggesting a rule of law but merely urging, "that is how human beings and courts and juries decide what people intend, by their actions."

This incident draws our attention to the long history, recounted in *United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977), of burden shifting instructions by trial courts to juries. While we shall not repeat the discussion there, we commend a careful reading of *Chiantese* to government's counsel. In that case, as in this, specific intent to bring about a certain result was in issue. Neither the acts done nor intent to do them was in dispute. That they had been done with intent to bring about a certain consequence—here intimidation of the trial judge—was disputed.

In *Chiantese*, we repeated the court's oft-stated condemnation of trial judge instructions which raised an *inference* which a jury might draw (of intent to produce consequences) to a *presumption* of such intent

unless the defendant proved otherwise. We found such an instruction to have unlawfully shifted the burden of proof from the prosecution to the defense.

■ Here, the prosecutor's remarks did not deal with intent to intimidate. He had reached only the point of arguing that appellant intended to do the act (make the statement) which he admittedly had done.[3] It was improper for government counsel to couch his argument in terms of a *presumption*, but he urged only that the jury find, by presuming, that which was not in any event disputed. While improper, therefore, the remark was harmless.

Later, in argument, the prosecutor did urge the jury to find that appellant had acted with specific intent to intimidate the judge, and this argument did not contain any objectionable remarks.

Thus, at the point counsel was interrupted by objection he had not urged any burden-shifting proposition of law as to any issue in dispute. His use of the word "presumption" in stating a proposition against the defendant is fraught with danger of reversible error, for the defendant is presumed innocent and that presumption remains with him. Counsel is permitted to urge the jury to draw an *inference* from proven facts and, when the argument reached the point of discussing the crucial issue—intent to intimidate—no more than this was urged. Therefore, we find the careless use of the word "presumption" as to acts done and not disputed to have been at worst, harmless. The court's instructions to the jury properly submitted the issue of specific intent to the jury for its determination from all the evidence, unaided by any presumption.

■ Defendant's fourth contention is that the district court erred by not admitting into evidence the entire transcript of

---

2. We do observe, however, without invading a trial judge's preeminence in these matters, that when dealing with motions brimming with potentially prejudicial argument, district courts are well-advised to ask the jurors to retire temporarily to the jury room.

3. During the colloquy, government counsel said, "I was about to go to specific intent when you [defense counsel] interrupted me."

the sentencing hearing before Judge O'Kelley. The district court permitted the transcript of the hearing, save certain prejudicial portions and a short final section, to be read to the jury. Only the language containing the actual threats, *see* p. [1] *supra*, was admitted into evidence as an exhibit for the jury during its deliberation. Jones characterizes the transcript as either a "recorded recollection" governed by Fed.R. Evid. 803(5), or a "public record and report" governed by *id.* 803(8). This characterization is patently incorrect. Rule 803 deals with exceptions to the hearsay rule. The statement at issue is paradigmatic nonhearsay; it was offered because it contains threats made against officers of the federal courts, *i. e.*, it contains the operative words of this criminal action. It was not "offered in evidence to prove the truth of the matter asserted," *id.* 801(c). Thus, the limitation upon Rule 803(5)[4] is inapposite.

■ Far more relevant to this point, however, is Fed.R.Evid. 106,[5] which guards against admission into evidence of truncated statements likely to present an out-of-context picture to the jury. That rule, however, calls for a determination of "fairness." We decline to find an abuse of discretion in admitting as an exhibit only one portion of the sentencing transcript.[6]

■ The fifth assertion of prejudice by Jones stems from the district court's instruction on reasonable doubt, which was:

I charge you that a reasonable doubt is a real doubt based upon reason and common sense after careful and impartial consideration of all of the evidence.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Record, Vol. I at 290–91. This language is almost identical to that appearing in U. S. Fifth Circuit, District Judges Association, Pattern Jury Instructions 8 (3B) (West 1979). Jones likens it to the jury instruction disapproved in *United States v. Baptiste*, 608 F.2d 666 (5th Cir. 1979), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981). That charge defined proof beyond a reasonable doubt as "proof you would be willing to rely and act upon in the management of your own personal affairs." *Id.* at 668. The differences between the *Baptiste* charge and the one under consideration here are manifest. The improper *Baptiste* charge would direct a jury to convict based upon a general standard of managing one's own matters. The charge here at issue requires proof of a "convincing character" sufficient to justify reliance "without hesitation" in the conduct of one's "most important affairs." The standard adequately and protectively embodies the notion of proof beyond reasonable doubt. Indeed, our court has held as much on prior occasion. *United States v. Turk*, 526 F.2d 654, 669 (5th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). (Defendant's requested charge, similar to charge under present consideration, "clearly would have been appropriate"); *United States v. Richardson*, 504 F.2d 357, 361 (5th Cir. 1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975) (approving use of "would not hesitate" language). *Cf. Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954) (reasonable doubt should be defined "in terms of the kind of

---

4. "If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Fed.R.Evid. 803(5) (in relevant part). Rule 803(8) contains no such limitation. Its invocation, then—incorrect as a matter of law any way—advances defendant's argument not one iota.

5. "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

6. Those portions not admitted into evidence but read to the jury do not seem on fair consideration to be highly relevant.

doubts that would make a person hesitate to act"). The charge was proper.[7]

■ The sixth and final contention raised by Jones is that his jury contained no blacks. While the venire from which the jury was chosen contained three blacks of 28 persons, the government exercised its three peremptory strikes to exclude all three. The contention of unconstitutionality, however, is devoid of merit. Jones does not bother to argue the existence of a consistent or systematic practice of striking blacks from juries. *Swain v. Alabama*, 380 U.S. 202, 221–28, 85 S.Ct. 824, 836–40, 13 L.Ed.2d 759 (1965). Controlling Supreme Court authority states

> we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.

*Id.* at 222, 85 S.Ct. at 837.

### III.

We have rejected each of defendant Jones' six arguments on appeal. He has been convicted fairly of violating 18 U.S.C. § 1503 with proof beyond a reasonable doubt. This conviction is

AFFIRMED.

---

7. Jones has argued that three charges on reasonable doubt that he requested should have been given by the district court. He cites no authority in his brief. The district court's charge on reasonable doubt, as it appears in text, was sufficient.