526 A.2d 75

**Horace H. BEST**

v.

**STATE of Maryland.**

**No. 1170, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

June 4, 1987.

Michael D. Montemarano (Paul M. Weiss, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, John L. Scarborough, State's Atty. for Cecil County and David H. Parrack, Asst. State's Atty. for Cecil County, on brief, Elkton), for appellee.

Argued before ALPERT, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

Horace H. Best, the appellant, was arrested by members of the Maryland State Police in the course of their execution of a search and seizure warrant at 688 Frenchtown Road in Elkton, Maryland. A Cecil County grand jury subsequently charged the appellant in a 19 count indictment with numerous violations of the laws governing controlled dangerous substances. Following a jury trial in the Circuit Court for Cecil County (Cole, J., presiding), the appellant was convicted of possession of methamphetamine with intent to distribute, possession of marihuana with intent to distribute, possession of controlled paraphernalia, possession of cocaine, and possession of L.S.D. with intent to distribute. The trial

judge sentenced him to aggregate terms of 19 years in prison. The appellant presents the following issues for our review:

1. Was there sufficient probable cause in the Affidavit and Application for Search Warrant to support the issuance of a search and seizure warrant for 688 Frenchtown Road?

2. Did the trial court err by refusing to exclude testimony concerning a telephone call made to the premises during execution of the warrant?

3. Did the court commit "plain error" in improperly instructing the jury?

In December of 1985, Corporal Robert G. Ellis of the Maryland State Police and Detective John Eller of the Newark, Delaware Police Department applied to Judge Kenneth A. Wilcox of the District Court of Maryland for a warrant to search the premises at 688 Frenchtown Road. In their application and affidavit, Corporal Ellis and Detective Eller asserted that there was probable cause to believe that the laws relating to controlled dangerous substances, Md.Code (1982 Repl.Vol.), Art. 27, §§ 276 *et seq.*, were being violated in and upon those premises. Judge Wilcox issued a search and seizure warrant on December 6, 1985, authorizing the police to:

A. Enter and Search the person/s, premises and vehicle/s at the aforementioned address,

. . . . .

D. Seize all evidence, paraphernalia, Controlled Dangerous Substance/s, papers, evidentiary items, receipts, bills and money used in or incidental to the conduct or operation of Controlled Dangerous Substance violations found in or upon said premises, person/s, or vehicle/s, or found in close proximity to contraband, Controlled Dangerous Substance, or Controlled Dangerous Substance paraphernalia,

> E.  Arrest all person/s found in or upon said premises who are participating in violations of the statutes hereinbefore cited, ....

On December 19, 1985, Corporal Ellis and Detective Eller, assisted by additional Maryland State Policemen, executed that warrant. Present in the house when the police arrived to execute the warrant were the appellant, his wife, Colleen Best, and one Cynthia Jeffers. After entering the residence, the officers conducted a search and seized quantities of several controlled dangerous substances as well as various items of drug paraphernalia. Corporal Ellis searched the appellant and seized $4,800 in cash from his person. An additional $4,500 in cash was recovered from a bedroom. In the course of the search and seizures, all three individuals present in the house were placed under arrest.

## I.

Prior to the appellant's trial, he filed a motion to suppress the evidence obtained as a result of the search and seizure at 688 Frenchtown Road. At the hearing on that motion, the appellant argued that the investigating officers' application and affidavit did not contain sufficient probable cause to support issuance of the search warrant for 688 Frenchtown Road. The trial court denied the appellant's motion, and the evidence seized pursuant to the warrant was admitted at his trial. The appellant challenges that ruling.

In reviewing the issuance of a search warrant, we must assess whether, under the "totality of the circumstances," the warrant application set forth probable cause. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Potts v. State,* 300 Md. 567, 479 A.2d 1335 (1984). As reviewing judges, we do not "make a *de novo* determination of probable cause but simply [determine] whether there was a 'substantial basis' for the warrant-issuing magistrate's determination that probable cause existed." *Trussell v. State,* 67 Md.App. 23, 29, 506 A.2d 255, *cert. denied,* 306 Md. 514, 510 A.2d 260 (1986). The appellant argues that the affidavit submitted by Corporal Ellis and Detective Eller

was insufficient to establish probable cause because it contained only unsubstantiated conclusory statements. We are satisfied, however, that under the totality of the circumstances, there was a substantial basis for the warrant-issuing judge's finding of probable cause.

The affidavit supporting the application for a search warrant set forth the following information:

1. On August 18, 1985, Detective Eller of the Newark Police Department was advised by a confidential informant (CI # 1) that the appellant was selling large quantities of methamphetamine from a residence located on Frenchtown Road in Elkton, Maryland. The same confidential informant told Detective Eller on August 28, 1985 that an individual named Jeffrey Michael Lester, a white male identified as "Carlo," and the appellant and his wife resided at 688 Frenchtown Road and that they were trafficking in methamphetamine. On October 28, 1985, Detective Eller made arrangements through his confidential informant to purchase one ounce of methamphetamine from Jeffrey Lester. Such a transaction took place in the State of Delaware, and the substance purchased by Detective Eller tested positive as methamphetamine.

2. On November 2, 1985, Trooper First Class Robert Perrot of the Maryland State Police investigated a complaint by the mother of one Kelly Smith. Kelly Smith's mother told Trooper Perrot that her daughter was living at 688 Frenchtown Road with Jeffrey Lester and the appellant, that she was being held there against her will, and that Lester and the appellant kept her high by injecting her with drugs. When Trooper Perrot responded to 688 Frenchtown Road, he located Kelly Smith at the house, but she informed him that she was not being detained there against her will. Trooper Perrot also had contact with Jeffrey Lester while at the house.

3. On November 12, 1985, Trooper Bryan J. Sporrer of the Maryland State Police responded to a report of an assault at 688 Frenchtown Road. He arrested Carlo James Martelli after learning that Martelli allegedly threatened an individual with a handgun.

4. On November 13, 1985, Trooper Sporrer returned to 688 Frenchtown Road and arrested Jeffrey Lester, who was a fugitive from the State of Texas.

5. On November 13, 1985, Detective Eller learned from Eileen Smith, mother of the aforementioned Kelly Smith, that her daughter was in the Detoxification Unit of the Delaware State Hospital after being given a combination of various drugs while in the company of Jeffrey Lester, Carlo Martelli and others at 688 Frenchtown Road.

6. On November 14, 1985, Detective Eller spoke with a confidential informant (CI # 2), who advised Detective Eller that he/she had seen Kelly Smith in the company of Jeffrey Lester, Carlo Martelli and the appellant, and that Ms. Smith had acted out of character, as if she was under the influence of drugs.

7. On November 14, 1985, Detective Eller interviewed a confidential informant (CI # 3), who advised Detective Eller that he/she had been in the residence at 688 Frenchtown Road on October 31 and November 10, 1985, in the company of the appellant and his wife. While there, the confidential informant had seen "marijuana, methamphetamine, hashish, and Psilicybin."

8. On November 18, 1985, Detective Eller interviewed a confidential informant (CI # 4), who stated that he/she had personal knowledge of the appellant's drug dealings. The confidential informant further stated that the appellant had been trafficking in drugs for several years and that he/she had sold methamphetamine for the appellant; that the appellant and Carlo Martelli were unemployed and made a living from selling drugs; that the appellant pur-

chased methamphetamine in quantities of two to three pounds; that the appellant currently had lab equipment and chemicals on his property, to be used in operating a clandestine methamphetamine lab; and that the appellant had operated a methamphetamine lab in the past.

9. Detective Eller learned through investigation that the appellant was renting a house at 688 Frenchtown Road from one John Bashore for $300 a month. Corporal Ellis of the Maryland State Police ran a check with the Conowingo Power Company and learned that service at 688 Frenchtown Road was initiated on February 4, 1985 in the name of Mary Lou Bashore.

The appellant's primary criticism of the affidavit is directed at the information derived from the four confidential informants. In the appellant's view, the affidavit was deficient because it lacked any attestation as to the reliability of the informants or any details regarding the basis of their knowledge. In so arguing, the appellant relies on the mandates of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). While recognizing that the *Aguilar-Spinelli* two-pronged test, requiring that a law enforcement officer seeking a search warrant based on hearsay provide some information (1) substantiating the basis of the informant's knowledge and (2) establishing the informant's "veracity," is no longer constitutionally binding, the appellant correctly points out that the two prongs of that test remain valid considerations under the *Illinois v. Gates* "totality of the circumstances" approach. *Trussell v. State, supra,* 67 Md.App. at 29–30, 506 A.2d 255.

■ Had the affidavit under review included only the information attributed to any one, or even all, of the confidential informants, the appellant's argument that the affidavit was deficient based on *Aguilar-Spinelli* considerations might be more persuasive. Considering the affidavit

in its entirety, however, we believe the cumulative impact of the information set forth therein provided a substantial basis for the warrant-issuing judge's determination that probable cause existed. As the Court of Appeals stated in *Potts v. State, supra,* 300 Md. at 575, 479 A.2d 1335:

> Under the *Gates* test, ... the police are not required to corroborate every piece of information supplied by the informant. Where, as here, the affidavit taken as a whole creates a fair inference that a particular unsubstantiated assertion is probably correct, probable cause may be found to exist.

Given Detective Eller's purchase of methamphetamine from Jeffrey Lester, the information provided by Kelly Smith's mother, and the earlier arrests of Carlo Martelli and Jeffrey Lester at 688 Frenchtown Road, a fair inference was created that the information provided by the four confidential informants was probably correct. Consequently, we hold that the warrant application in this case amply demonstrated probable cause for the issuance of the warrant.[1]

## II.

While the police were conducting their search of 688 Frenchtown Road, the telephone in the house rang. The call was answered by Detective Eller, who testified at the appellant's trial about the conversation that ensued:

> [DETECTIVE ELLER]: I picked up 'phone. I said, "Hello." She said, "Horace?" I says, "Yeah." She says, "This is Debbie. I got the money that I owe you" or something to that nature.
>
> .    .    .    .    .
>
> She stated her name was Debbie. She said, "This is Debbie." She said, "I got what I owe you. Can I get

---

1. We also note that even if probable cause had been lacking, the appellant does not suggest that the police did not act in good faith in seeking and executing the warrant. Thus, the reliance of the executing officers upon the presumptive validity of the warrant made suppression an inappropriate sanction. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

the, can I get the same thing that I got last time?" And I said, "Yeah." I says, "You got the money?" And she says, "Yeah. Can I get a gram?" I says, "Okay." She said, "I'll be right over." And she said she was leaving from Delaware Park. At that point, that was the end of the 'phone call.

Shortly after the conclusion of this telephone conversation, a woman named "Debbie" arrived at 688 Frenchtown Road looking for the appellant.

The appellant attacks the trial court's admission of Detective Eller's testimony concerning the telephone call on two grounds. First, he argues that the interception of the call by Detective Eller was outside the scope of the search warrant for 688 Frenchtown Road. He next contends that Detective Eller's testimony as to the substance of the telephone conversation was inadmissible hearsay. We reject both arguments.

### A.

We have already held that sufficient probable cause existed to support issuance of the search warrant for 688 Frenchtown Road. Thus, the police entered the premises pursuant to a valid warrant. The appellant lost any expectation of privacy he may have had in incoming telephone calls when the police lawfully entered the premises. *See United States v. Gann,* 732 F.2d 714, 723 (9th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984) (defendant did not have reasonable expectation of privacy in telephone conversation overheard by detective lawfully on premises pursuant to search warrant, as detective "was entitled to gather any incriminating evidence which he was capable of perceiving through any of his senses"). Moreover, we are not convinced that Detective Eller's interception of a telephone call intended for the appellant constituted a seizure within the Fourth Amendment, as would have been the case had the police eavesdropped upon or recorded conversations to which the appellant himself was a party. 1 W. LaFave, *Search and Seizure* (2d ed. 1987) § 2.1(a), at

301. In any event, it would be unreasonable to require police officers executing a search and seizure warrant, once lawfully on the premises to be searched, to ignore the ringing of a telephone or a knock at the door. Detective Eller acted permissibly in answering the telephone during the execution of the search warrant.

## B.

■ "Hearsay may be defined as an out-of-court assertion offered in court for the truth of the matter asserted, resting for its value upon the credibility of the out-of-court asserter." *Ali v. State,* 67 Md.App. 339, 343, 507 A.2d 648 (1986). Detective Eller's testimony concerning his conversation with Debbie from Delaware was not offered in court for the truth of what Debbie, the out-of-court asserter, said; rather, it was offered as evidence of the fact that the call was made. As such, Detective Eller's testimony was not hearsay at all, but evidence of a verbal act. *United States v. Hansbrough,* 450 F.2d 328, 329 (5th Cir.1971). Testimony concerning telephone calls made to or received at a particular location has been held admissible frequently in prosecutions for bookmaking and other gambling activities, where such testimony is offered not to establish the truth of what was said over the telephone, but as evidence that the calls were made to the location for the purpose of placing bets. *Courtney v. State,* 187 Md. 1, 6, 48 A.2d 430 (1946). *See generally* Annot., 13 A.L.R.2d 1409 (1950 & Later Case Service Supp.1973), and cases there cited. Analogously, Detective Eller's testimony about the phone call in this case was offered as evidence that the call was made for the purpose of arranging an illegal drug transaction. The trial court did not err in admitting Detective Eller's testimony.

## III.

The appellant's final argument concerns the trial judge's instructions to the jury. At one point in his instructions, while explaining that it is a criminal offense to possess certain controlled dangerous substances, the judge stated,

"There's no question he possessed these things against the law, under the facts of this case." Later, while explaining some of the factors the jury might consider in reference to the concept of joint possession, the judge commented that the jury could consider "other factors such as money being found around and things like that." Although the appellant did not object to these instructions at the time, he now invites us to find that the quoted comments, particularly the first one, constitute "plain error" under Rule 4–325(e). We decline this invitation.

■ Even accepting the appellant's assertions of error in the court's instructions, we will not exercise the discretion conferred upon us by Rule 4–325(e) absent compelling or exceptional circumstances. *Sine v. State,* 40 Md.App. 628, 632, 394 A.2d 1206 (1978), *cert. denied,* 284 Md. 748 (1979). The appellant has failed to persuade us that such circumstances exist in this case. Indeed, we do not believe the instructions, taken as a whole in their proper context, prejudiced the appellant to any significant degree. The first statement challenged by the appellant occurred as the trial judge was explaining the State's burden of proof with respect to the possession offenses:

It's an offense to possess certain designated controlled dangerous substances, which are against the law and all those I mentioned are certainly against the law. In order for the State to prove him guilty of this offense, the State must prove beyond a reasonable doubt he had possession of any one of those drugs I mentioned and his possession was not authorized by law. *There's no question he possessed these things against the law, under the facts of this case.* (Emphasis supplied).

Although "it is generally improper for a trial judge to show his or her opinion of those matters upon which the jury will eventually pass," *Gore v. State,* 309 Md. 203, 214, 522 A.2d 1338 (1987), we do not believe that is what the trial judge was doing in the instant case. Instead, from the context in which the statement appears, we think the judge was attempting to emphasize to the jury that the State had

to prove possession beyond a reasonable doubt. Immediately after the challenged statement, the judge gave a lengthy explanation of what constitutes possession and of the concept of joint possession. Had he truly been expressing the opinion that the appellant possessed controlled dangerous substances beyond any question, the judge's succeeding instruction on possession would have been superfluous. Thus, while the challenged statement may have reflected a poor choice of words, the subsequent instructions remedied the situation to the point where we do not believe the trial judge's comment improperly influenced the jury's verdicts.

As for the appellant's assertion of error in the judge's instruction that the jury could consider "other factors such as money being found around and things like that," we do not think that remark was improper where the appellant was charged with several counts of possession of controlled dangerous substances with intent to distribute. Certainly, it does not rise to the level of "plain error."

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.