STATE of South Dakota, Plaintiff
and Appellee,

v.

Deb PECK, Defendant and Appellant.

No. 16826.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1990.

July 25, 1990.

Sherri Sundem Wald, Asst. Atty. Gen. (Roger A. Tellinghuisen, Atty. Gen., on the brief), Pierre, for plaintiff and appellee.

Jana Miner Lunsford, Gregory, for defendant and appellant.

MILLER, Justice.

In this opinion we affirm a conviction of tampering with a witness, holding that (1) the indictment adequately apprised the defendant of the charges, and (2) there was sufficient evidence to support the conviction.

### FACTS

In January, 1987, Terri Pennington (then age 16) purchased a quantity of marijuana from her boyfriend, Mark Hildebrand (age approximately 26). In the presence of her mother, Pennington gave a written statement to Division of Criminal Investigation Agent Boots admitting to purchasing the marijuana for $35.00. Prior to any arrest of Hildebrand, Pennington was contacted

by two adults, Deb Peck and Nancy Troll (both in their 30's), who ultimately intimidated and convinced her to change her story in order to preserve her relationship with Hildebrand and her friendship with them. (Peck and Troll were also friends of Hildebrand and apparently involved with him in the acquisition and use of drugs in the community.) At a meeting in the Peck/Troll residence they fabricated a story to the effect that Pennington would say that she had purchased the marijuana from an imaginary person they named "Animal" who supposedly lived in an adjoining town. Pennington was also instructed to fake a hysterical scene and tell her mother that (1) she was frightened because "Animal" and his friends were after her; and (2) Hildebrand would sue them for a large sum of money. The conversation surrounding the fabrication of the story was taped by a paid informant (a classmate and friend of Pennington) who was present at the time the false story was concocted.

Ultimately, Peck and Troll were jointly charged and convicted of tampering with a witness under SDCL 22–11–19(1).* This appeal followed. (We summarily affirmed Troll's conviction by an order dated June 8, 1990.)

## DECISION

## ISSUE I

## WHETHER THE INDICTMENT WAS SUFFICIENT.

 The count of the indictment under which Peck was convicted alleged:

That on or about January 11, 1987, Nancy Troll and Debra Peck did in Charles Mix County, South Dakota in violation of SDCL 22–11–19(1), tamper with a witness, a person who threatens to injure any person or property, or with intent to influence a witness, to-wit: Terri Pennington, offers, confers or agrees to confer any benefit on a witness or

prospective witness *in an official proceeding* to induce the witness to testify falsely[.] (Emphasis added.)

Under our law, SDCL 23A–6–14 provides:

No indictment or information is insufficient, nor can the trial, judgment, or other proceeding thereon be affected, by reason of a defect or imperfection in its form, *which does not prejudice the substantial rights of the defendant.* (Emphasis added.)

Peck argues that because no official proceeding had been instituted against Hildebrand at the time of the alleged tampering there can be no violation of the witness-tampering statute. First, she asserts that the commencement of an official proceeding must begin with the filing of a complaint. Irrespective of the merit of this argument, it fails to properly address whether the *indictment* was sufficient. She fails to direct our attention to any defects in the indictment which have prejudiced her rights. Rather, her argument asserts that state failed in its burden to prove all of the essential elements of the crime. We will address that argument in Issue II.

In *State v. Boutchee,* 406 N.W.2d 708 (S.D.1987), we reiterated that "[a]n [indictment] is sufficient if it appraises [sic] the accused of the nature of the accusation against him with reasonable certainty so that he may prepare a defense and be protected from double jeopardy." *Id.* at 710 (footnote omitted). Generally if the charging document employs the language of the statute, or its equivalent, it is sufficient. *State v. Logue,* 372 N.W.2d 151, 155 (S.D.1985). The test is whether the indictment has been "designated in such a manner as to enable a person of common understanding to know what was intended." *Id.*

We hold that the indictment provided sufficient notice to Peck of the charges against her, and *did not:* (1) prejudice her

---

* SDCL 22–11–19 provides in salient part:

A person who threatens to injure any person or property, or with intent to influence a witness, offers, confers or agrees to confer any benefit on a witness or prospective wit-

ness in an official proceeding to induce the witness to:

(1) Testify falsely;

. . . .

is guilty of tampering with a witness.

substantial rights, (2) prevent or hinder her preparation of a defense, or (3) deny her protection against double jeopardy. *Boutchee, supra.*

## ISSUE II

### WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE CONVICTION.

In determining the sufficiency of the evidence on appeal, the question presented is "whether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt.... In making this determination, the Court will accept that evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict." *State v. Miller,* 429 N.W.2d 26, 38 (S.D.1988) (citations omitted). *See also State v. Jenner,* 451 N.W.2d 710 (S.D. 1990); *State v. Bachman,* 446 N.W.2d 271 (S.D.1989). Additionally, when interpreting statutes, intent must be derived from the statute itself as well as other enactments relating to the same subject. *In re Cancel. of Stabio Ditch Water Right,* 417 N.W.2d 391 (S.D.1987); *State v. Byrd,* 398 N.W.2d 747 (S.D.1986).

Peck argues that State failed to show that (1) Pennington testified falsely in an official proceeding and (2) that she provided any inducement for Pennington changing her story.

Peck concedes that Pennington was a witness to the Hildebrand investigation in January, 1987. She argues that an "official proceeding" had not been commenced because no complaint was filed against Hildebrand charging him with distribution of marijuana until April 8, 1987. Thus, she asserts that until the complaint is filed, beginning an "official proceeding," there can be no violation of the statute. We do not agree with this interpretation.

We can find no definition for the term "official proceeding." It is obvious, however, that the legislature, at the very least, intended it to include proceedings before judicial tribunals. If the legislature intends that it be expanded beyond proceed-ings in the judicial system, it will have to amend the statute and so specify. *See, e.g., State v. Independent School Dist. No. 810, Wabasha County,* 260 Minn. 237, 109 N.W.2d 596 (1961).

■ We held in *Boutchee* that the existence of an "official proceeding" was not an essential element to the charge (in that case it was implicit because a trial date was pending). What is significant under the tampering statute is the status of the person being influenced either as a "witness" or "prospective witness." Such status is dependent upon whether the defendant knows or should expect to know that the witness will be called to testify. *Boutchee, supra* (citing *United States v. Davis,* 752 F.2d 963 (5th Cir.1985)); *see also Berra v. United States,* 221 F.2d 590 (8th Cir.1955). We therefore hold that the term "official proceeding" also implicitly includes a criminal investigation where "prospective witnesses" exist.

■ The focus of anti-tampering statutes is on the actions and intent of the person trying to influence the witness. *State v. Bartilson,* 382 N.W.2d 479, 481 (Iowa App.1985). The evil prohibited is conduct which would threaten the veracity and cooperation of witnesses. *People v. Moyer,* 670 P.2d 785, 791 (Colo.1983). The defendant need not succeed or actually induce the witness to do anything. *Id.*

■ One of the material elements of the offense is *intent* to induce a witness to withhold testimony and information. *Boutchee, supra.* Only the intent to induce has to be proven by State, *i.e.,* actual false testimony is not required. It is axiomatic that intent involves the state of mind and may be proven by the surrounding facts and circumstances as they exist with regard to the defendant's action. *State v. Blakey,* 332 N.W.2d 729 (S.D.1983); *State v. Cody,* 323 N.W.2d 863 (S.D.1982). Therefore, it was not necessary under our statute for State to prove that Peck was successful in her effort to influence Pennington to testify falsely. *Boutchee, supra; see also United States v. Jeter,* 775

**444**

F.2d 670 (6th Cir.1985); *United States v. Brimberry*, 744 F.2d 580 (7th Cir.1984).

This court should not lose sight of the statutory purposes, i.e., the protection of participants in judicial proceedings and preventing interference with the administration of justice by corrupt methods. *See United States v. Chandler*, 604 F.2d 972 (5th Cir.1979), *reh'g denied*, 608 F.2d 524, *cert. dismissed*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980). In *State v. Crider*, 21 Ohio App.3d 268, 487 N.E.2d 911 (1984), the court stated:

> The intimidation statute was designed to protect those people who saw, heard or otherwise knew, or were supposed to know, material facts about the criminal proceeding. Once a person becomes possessed of such material facts, he likewise becomes a 'witness' within the meaning of [the statute], and subject to its protection.
>
> It would be ludicrous to hold that the [person], who was intimidated, is not a 'witness' under [SDCL 22–11–19] because ... the prosecution had not yet issued a complaint ... to commence proceedings.

487 N.E.2d at 913. *See also Davis, supra;* and *Hunt v. United States*, 400 F.2d 306 (5th Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566 (1969). We agree.

Consequently, the connotation of "witness" or "prospective witness" should be determined by substance, rather than form. *Davis, supra; Chandler, supra.* Keeping this in mind, when viewed in light of our definition of "witness," whether or not an "official proceeding" has been commenced, by complaint or otherwise, is irrelevant.

In addition to Peck's concession that Pennington was a witness in the Hildebrand investigation, the following facts indicate that she could be expected to be a "witness" in an "official proceeding." Pennington made a statement to the authorities implicating Hildebrand in a distribution of marijuana. Peck knew this before approaching Pennington. This was a criminal drug investigation in which Peck had to have known that Pennington was a "pro-spective witness" in future criminal proceedings against Hildebrand.

■ As to the second part of Peck's argument, this case centered on the credibility of two witnesses, Pennington and the paid informant (whose testimony was supported by the audio tape). The jurors are the exclusive judges regarding the credibility of the witnesses where conflicting testimony arises. *State v. Herman*, 253 N.W.2d 454 (S.D.1977); *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). There was an abundance of evidence supporting the jury's decision.

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs with writing.

HENDERSON, Justice (concurring).

In concurring, I wish to express that the Indictment is poorly drafted and should have been more explicit. The Indictment begins with past tense, i.e., "did" and then alleges a definition of tampering with the witness; and this latter allegation is worded in the future. Again, we see sloppy procedure which spawns unnecessary appeals to this Court. I can comfortably concur, notwithstanding the sloppy procedure, because this appellant knew what she was charged with, namely tampering with the witness under SDCL 22–11–19(1) and she knew with reasonable certainty of the accusation so as to prepare a defense. Likewise, she was protected from double jeopardy if found not guilty. Her substantial rights have not been prejudiced.

Appellant schemed to squelch a prosecution by successfully attempting to influence this young girl to change her story from whom she obtained her marijuana. This young lady, Terri, was a prospective witness and this appellant and Troll knew it. Beyond peradventure, Troll and Appellant were aware that Terri had knowledge about Hildebrand's drug distribution activities; they knew she would be a witness in a future court proceeding. The dignity of the law cannot tolerate potential defen-

dants to intimidate or influence prospective witnesses in a criminal proceeding with no repercussions whatsoever. Solicitation of false testimony from a prospective witness is abhorrent to the orderly administration of justice. Threatening a prospective witness—intimidating a prospective witness—to have them testify falsely, full well knowing that a criminal proceeding, via a criminal investigation, is underway is addressed by SDCL 22–11–19(1). Oftentimes, this Court has expressed that the manifest intent of a statute must be derived from a statute *as a whole*. *State Theater Co. v. Smith*, 276 N.W.2d 259 (S.D.1979). We are not at liberty to pick and peck away at the intent of a statute, thereby fractionalizing it to independent slices, by resting our interpretation on one segment thereof.