2000 SD 70

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Leon L. CHARGER, Defendant and Appellant,**

**No. 21149.**

Supreme Court of South Dakota.

Considered on Briefs April 24, 2000.

Decided May 31, 2000.

Mark Barnett, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, South Dakota, for plaintiff and appellee.

Timothy J. Rensch, Rapid City, for defendant and appellant.

GILBERTSON, Justice

[¶ 1.] Defendant Leon Charger (Charger) appeals his conviction for witness tampering. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] In July of 1998 Charger was charged with sexual contact with Jacqueline Swimmer's (Swimmer) two daughters. Swimmer testified as a witness against Charger in the first criminal trial in February 1999, which resulted in a hung jury. Subsequently, Swimmer was subpoenaed as a witness to testify against Charger a second time during the May 25 and 26, 1999 retrial proceedings. Charger was acquitted by the jury in this second trial. It was during the interim between these two trials that Charger was charged with tampering with a witness, in violation of SDCL 22–11–19(2).

[¶ 3.] On May 7, 1999, Charger met with his cellmate, Leon Norman (Norman), and instructed him to deliver or relay a note to Swimmer. Norman was scheduled to be released later that day. Charger offered Norman five dollars to deliver the message. Charger completed a cash-out request from his jail account, indicating as his reason that a "cousin" of his needed "gas to get home" from jail. Norman is not Charger's cousin. Charger wrote what he believed to be Swimmer's telephone number and a message on a piece of paper for Norman to read to Swimmer.

[¶ 4.] Norman went to the house of an acquaintance, Larry Welder, where he made a telephone call, utilizing the phone number Charger had given him. He reached a woman he thought was Swimmer. Swimmer did not have a telephone, so she frequently used the phone of her sister-in-law, good friend and neighbor, Jacalyn Hagans (Hagans), to receive messages from callers. Thus, the phone number Charger had given Norman was actually Hagans'. When Hagans answered the phone, Norman asked to speak "to Jackie," and when Hagans answered "this is Jackie," Norman stated "I have a message from Leon."

[¶ 5.] Hagans testified that during the phone call, Norman stated:

> I have a message from Leon and I said okay. And he said that the State has a file from Behavior Management. And that if you testify in court you'll be arrested. He said that the prosecutor is not a friend of yours, he is a friend of Leon's. He said if you even try to contact the prosecutor, you'll be arrested. If you show up in court, all I have to do is say your name and you'll be arrested. He said that he's protected under the Shield Act, and that meant that any crime that's not pled in one year you can't be prosecuted for it even if it's a sexual abuse. Then I asked him if this was a threat. And he said yeah that's what it sounds like, but I'm having a hard time reading his writing.

Hagans asked the caller to identify himself, and Norman "said he was a friend of Leon's," and that "we were in jail together, I just got out." Hagans testified she immediately concluded that the caller was referring to Leon Charger, and his message was mistakenly being relayed to her, rather than to Swimmer.

[¶ 6.] Hagans testified that because she "thought this was a threat," she "dialed Star 69" on her telephone, so she could identify the origin of the call for law enforcement. She promptly called the police. Officer Jegeris returned her call "right away" and reviewed the situation with her. At approximately 6:30 p.m., Hagans encountered Swimmer in the apartment complex parking lot. Hagans told Swimmer about the phone call she had received, and that she was "scared for [Swimmer]," but that she had contacted the police.

[¶ 7.] Norman was brought back to the Pennington County Jail on May 8, 1999. Charger made a written request to cancel his previous jail "cash-out" payment to Norman the same day Norman was returned to jail.

[¶ 8.] Officer Jegeris confirmed with Norman that Norman had indeed used Larry Welder's telephone to place the call to Swimmer at Hagan's residence, and that Charger had offered to pay him five to ten dollars to deliver the telephone message.

[¶ 9.] On June 7, 1999, Charger was accused by information with one count of Tampering With a Witness, in violation of SDCL 22–11–19(2), a Class 4 felony. He was arraigned before the Pennington County Circuit Court, and pled not guilty.

[¶ 10.] Charger was tried before a jury on July 7, 1999. At trial Norman could not recall the exact contents of Charger's handwritten note. However, he did remember Charger's message included the premise "[t]he attorney is not your friend if you don't cooperate with him or her," and that "[Swimmer would] go to jail if she didn't cooperate with the attorney." Norman also indicated "I just read what I could read that was legible writing, and then I just couldn't read his chicken scratching writing." Norman testified he had thrown the note away "in a garbage can up at Amaco." Jegeris was unable to find the note.

[¶ 11.] Charger testified on his own behalf. Charger testified that he had been involved with Swimmer "on and off for five years." He also alleged the note had been meant for both Swimmer and Robert Swimmer, her brother, and that Robert was "the root of the problem" from which the sexual contact charges had arisen. Charger claimed that Robert had sexually molested Swimmer, which caused her to file false criminal charges against Charger for sexual contact with her two daughters.

[¶ 12.] Charger's account of the contents of the note was different than Hagans'. He claimed the note stated:

I want to warn you the prosecutor isn't anybody's friend. If I get on the stand and he asks me about your sex abuse, who sexually abused you, Jackie, I'll tell

him it was your brother Robert. He's one root to this whole problem. You filed false allegations against me. I just wanted to tell you that though.

[¶ 13.] During Hagans' direct testimony at trial, Charger objected to her perceptions and descriptions of Norman's May 7, 1999 telephone call. Charger claimed Hagans' testimony violated the hearsay rule. The circuit court denied his objection, concluding Hagans' testimony concerning the contents of Norman's threatening phone call on behalf of Charger constituted verbal acts, not hearsay.

[¶ 14.] Charger also proposed four jury instructions at the close of the evidence. Specifically, Charger claimed that since Norman had phoned the wrong "Jackie," his proposed jury instructions 3 and 4 were required to explain that "attempt" is a lesser included offense of the completed crime of witness tampering. Charger also argued proposed jury instructions 1 and 2 were necessary to advise the jury about his "free speech rights." The circuit court rejected all four of Charger's proposed jury instructions.[1]

[¶ 15.] Charger was convicted of one count of Tampering With a Witness (SDCL 22–11–19(2)). Subsequently, Charger filed a Motion for New Trial. The circuit court conducted a hearing on this post-trial motion, at which Charger argued his proposed "attempt" instructions should have been given at trial. The circuit court denied this motion. On August 9, 1999, the circuit court sentenced Charger to serve four years in the state penitentiary, giving him credit for 75 days already served in the county jail.

[¶ 16.] Charger now appeals his conviction, raising the following issues for our consideration:

1. Whether Hagans' testimony concerning Norman's telephone call on behalf of Charger constituted inadmissible hearsay.

---

1. Charger has not appealed the circuit court's refusal to instruct the jury on free speech.

2. Whether the circuit court erred when it refused to instruct the jury on attempted witness tampering.

## STANDARD OF REVIEW

■ [¶ 17.] The circuit court has broad discretion in making evidentiary rulings. *State v. Knecht,* 1997 SD 53, ¶ 14, 563 N.W.2d 413, 419. We recently stated our standard of review for a circuit court's evidentiary rulings in *State v. Smith*:

> Evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard. *State v. Oster,* 495 N.W.2d 305, 309 (S.D.1993). The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion. *State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986).
>
> *Veeder v. Kennedy,* 1999 SD 23, ¶ 41, 589 N.W.2d 610, 619 (citing *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129).

1999 SD 83, ¶ 13, 599 N.W.2d 344, 348.

[¶ 18.] Our standard of review of the circuit court's refusal to give a requested instruction is well settled. This Court stated in *State v. Tapio,* 459 N.W.2d 406, 408–09, (S.D.1990):

> Where a request has been made to charge the jury on a lesser-included offense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error.... There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed *and* that a lesser offense was, in fact, committed. (emphasis in original.)
>
> [*State v. Scholten,* 445 N.W.2d 30, 32 (S.D.1989]) (citing *State v. Rich,* 417

N.W.2d 868 (S.D.1988)). *See also* [*State v. Gregg,* 405 N.W.2d 49 (S.D.1987) ]; *State v. Woods,* 374 N.W.2d 92 (S.D. 1985). "A trial court is not required to instruct on matters that find no support in the evidence...." *State v. Wilson,* 297 N.W.2d 477, 482 (S.D.1980); *State v. Kafka,* 264 N.W.2d 702, 703 (S.D.1978). 459 N.W.2d 406, 408–09 (S.D.1990).

## ANALYSIS AND DECISION

[¶ 19.] **1. Whether Hagans' testimony concerning Norman's telephone call on behalf of Charger constituted inadmissible hearsay.**

■ [¶ 20.] Charger argues the circuit court abused its discretion in allowing Hagans to testify concerning the statements made to her by Norman on behalf of Charger during the telephone call. Charger contends that these statements were inadmissible hearsay and thus, should have been excluded. The State argues the circuit court was correct in concluding Hagans' testimony concerning the substance of Charger's telephone message constituted "verbal acts," and thus was nonhearsay. We agree.

[¶ 21.] "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted." SDCL 19–16–1(3). Norman's statements on behalf of Charger to Hagans were not offered for their truth. The State's intention was not to convince the court and jury that "the prosecutor [was] not a friend of [Swimmer's]" or that Charger would actually have her arrested if she contacted the prosecutor. Its purpose was to show that Charger had induced Norman to deliver the message during the phone call, because it was these threatening statements which, by attempting to discourage Swimmer from testifying, violated SDCL 22–11–16.

[¶ 22.] In *State v. Carlsen,* 638 P.2d 512 (Utah 1981), the court faced a similar set of facts. In *Carlsen,* the defendant in-

structed a third party to threaten a witness that was to testify against him in an upcoming trial. Carlsen requested the third party to threaten the witness and "tell him that he better not show up for court the next day." Carlsen was charged with tampering with a witness. Carlsen argued the third party's testimony concerning the threatening statements was inadmissible hearsay. In affirming Carlsen's conviction, the court held that the purpose in offering the testimony was to show "merely that [the third party] had made the statements, because it was these threatening statements which, by attempting to discourage the witness from testifying, violated the [witness tampering] statute." *Id.* at 514.

[¶ 23.] Similarly, in *United States v. Jones*, 663 F.2d 567 (5th Cir.1981), the defendant was indicted and convicted of threatening the lives of a judge and prosecutor. Jones contested the admission of testimony concerning the language containing the actual threats made by him, at trial, by arguing the testimony was hearsay. In affirming his conviction, the Fifth Circuit Court of Appeals concluded the statements at issue were " ... nonhearsay; [the testimony] was offered because it contains threats made against officers of the federal courts, i.e., it contains the operative words of this criminal action. It was not 'offered in evidence to prove the truth of the matter asserted[.]' " *Id.* at 571.

[¶ 24.] Likewise, in this case, the testimony was offered as evidence of the fact that the call was made to Hagans, but intended for Swimmer. Because Norman's statements to Hagan were not offered to prove the truth of the matter asserted, Norman's statements were not hearsay.

[¶ 25.] Instead, Hagans' testimony was evidence of a verbal act. "Verbal acts are those 'out-of-court statements [that] are operative legal facts which constitute the basis of a claim, charge or defense ... and are nonhearsay.' " *Banks v. State*, 92 Md.App. 422, 608 A.2d 1249,

1254 (1992); McCormick on Evidence § 249, at 100 (5th ed. 1999) (noting verbal acts are "[u]tterance[s which are] operative facts[s]" (citing Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale LJ 229, 231 (1922)) and noting verbal acts are "utterances forming a part of the issue." (citing 6 Wigmore, *Evidence* § 1770 (Chadbourn rev. 1976))). "Since the law accords the making of such statements a certain legal effect, the sincerity and reliability of the declarant is of no consequence; the simple fact that such statements are made is relevant." *Banks*, 608 A.2d at 1254.

> Two types of evidence are not hearsay simply because § 19–16–1(801) excludes them by definition. First, verbal acts that are not offered to prove the truth of the matter asserted, but rather to establish what was done or created, are an actual part of the transaction involved in the lawsuit, and are excluded from the definition of hearsay by § 19–16–1(3) (801(c)). Obviously, a contract, [for example,] written or oral, would not be excluded as an out-of-court statement in a lawsuit based on it. The contract was an actual part of the transaction, and had independent legal significance or consequence.

John W. Larson, South Dakota Evidence § 801.1, at 535 (1991).

[¶ 26.] The "verbal acts" rule is a firmly established principle in the law of evidence:

> Not all out-of-court statements are hearsay. The hearsay rule only prohibits admission of evidence of out-of-court statements offered to prove the truth of the out-of-court declaration. Defendant overlooks the well-established 'verbal acts' rule. Utterances made contemporaneously with or immediately preparatory to an act which is material to the litigation that tends to explain, illustrate or show the object or motive of an equivocal act and which are offered irrespective of the truth of any assertion they

contain, are not hearsay and are admissible.

*State v. Kelley*, 953 S.W.2d 73, 85 (Mo.App. 1997) (citing *State v. Copeland*, 928 S.W.2d 828, 848 (Mo.1996), *cert. denied*, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997)); *see also Best v. State*, 71 Md.App. 422, 526 A.2d 75, 80 (1987) (citing *United States v. Hansbrough*, 450 F.2d 328, 329 (5th Cir.1971)) (concluding police officer's testimony about the contents of a telephone conversation with a third party calling the defendant's residence was admissible when it was merely offered as evidence the call was made for the purpose of arranging an illegal drug transaction).

[¶ 27.] The *Best* court, in affirming the defendant's conviction, recognized by analogy:

> Testimony concerning telephone calls made to or received at a particular location has been held admissible frequently in prosecutions for bookmaking and other gambling activities, where such testimony is offered not to establish the truth of what was said over the telephone, but as evidence that the calls were made to the location for the purpose of placing bets.

*Id.* (citing *Courtney v. State*, 187 Md. 1, 48 A.2d 430 (1946); [H.D. Warren,] Annotation, *[Admissibility of Evidence of Fact of Making or Receiving Telephone Calls,]* 13 A.L.R.2d 1409 (1950)). Similarly, here, the testimony was not offered to establish the truth of what Norman said over the telephone, but rather, as evidence Charger actually induced Norman to call Swimmer for the purpose of threatening her not to testify in his upcoming trial. Thus, the telephone conversation testimony was offered as a "verbal act," indicating that the call was made. *See Cephas v. State*, 719 So.2d 7, 8 (Fla.Dist.Ct.App.1998) (concluding witnesses' telephone conversation testi-

mony was a "verbal act," indicating that the call was made and the contents of the call); *State v. Kelly*, 207 N.J.Super. 114, 504 A.2d 37, 40 (N.J.Super.Ct.App.Div.1986) (ruling witness's testimony that she had received numerous telephone calls for the victim from the defendant was admissible as verbal conduct to show only the fact the calls were made).

[¶ 28.] The circuit court's decision allowing Hagans' testimony as evidence of verbal acts is affirmed.

[¶ 29.] **2. Whether the circuit court erred when it refused to instruct the jury on attempted witness tampering.**

■ [¶ 30.] Charger argues the circuit court improperly rejected his proposed jury instructions 3 and 4, regarding attempted witness tampering. He states a reasonable jury could have viewed his actions as an attempt to tamper with a witness because: (1) the wrong person was threatened; (2) Hagans was not a witness in an official proceeding; and (3) the contents of Charger's note did not constitute a threat "even though they may have been intended as one." The circuit court ruled no attempt instructions were warranted, because pursuant to *State v. Peck*, 459 N.W.2d 441 (S.D.1990), a criminal defendant need not actually succeed in threatening a potential witness to support a conviction for witness tampering.[2] We agree.

■ [¶ 31.] This Court has recently held that "[j]ury instructions are sufficient when, considered as a whole, they correctly state the applicable law and inform the jury." *State v. Jemison*, 1999 SD 29, ¶ 2, 590 N.W.2d 897 (citing *State v. Fast Horse*, 490 N.W.2d 496, 499 (S.D.1992) (citing *State v. Grey Owl*, 295 N.W.2d 748, 751 (S.D.1980))). "It is not error for the trial

---

**2.** The circuit court also concluded the elements of attempted witness tampering in this case did not meet the legal test for a lesser-included offense, as set forth in *State v. Tammi*, 520 N.W.2d 619, 620–24 (S.D.1994). As we conclude an attempt instruction was not warranted because of our holding in *Peck*, we do not reach this portion of the circuit court's analysis.

court to refuse a requested instruction which amplifies the principle embodied in a given instruction." *Id.* (citing *State v. Johnston,* 478 N.W.2d 281, 283 (S.D.1991) (other citations omitted)).

[¶ 32.] Charger's proposed jury instruction 3 stated:

Any person who attempts to commit any crime and in such attempt does any act toward the commission of such crime, but fails or is prevented or intercepted in the perpetration is guilty of a crime.

Proposed jury instruction 4 provided:

The elements of the crime of Attempting Witness Tampering, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:

1. The defendant had the specific intent to commit the crime of Witness Tampering;

2. The defendant did a direct act toward the commission of the intended crime; and

3. The defendant failed or was prevented or was intercepted in the perpetration of the crime.

As stated above, the circuit court refused both of these instructions.

■ [¶ 33.] Inherent in Charger's argument is the notion that in order to be rightfully convicted of tampering with a witness, he must have successfully completed the tampering. However, this argument is flawed. Generally, "[i]n the typical case of a criminal attempt, the factor distinguishing the attempt from the completed crime is that the intended criminal result, an element of the completed crime, was not achieved." *Brown v. State,* 550 So.2d 142, 143 (Fla.Dist.Ct.App.1989) (citing *Adams v. Murphy,* 394 So.2d 411, 414 (Fla.1981)).

■ [¶ 34.] However, under the laws of this state, to prove the crime of witness tampering a criminal defendant does not need to succeed in actually inducing a witness to testify falsely, or withhold informa-

tion. "The focus of anti-tampering statutes is on the actions and intent of the person trying to influence the witness." *Peck,* 459 N.W.2d at 443 (citing *State v. Bartilson,* 382 N.W.2d 479, 481 (Iowa App. 1985)). Only Charger's intent to induce Swimmer to withhold testimony and information in his criminal trial must be proven by the State. *Id.*

■ [¶ 35.] Thus, it was not necessary under SDCL 22–11–19(2) for the State to prove that Charger was successful in his effort to influence Swimmer not to testify or withhold information. *Id.* (citing *State v. Boutchee,* 406 N.W.2d 708, 712 (S.D. 1987); *United States v. Jeter,* 775 F.2d 670 (6th Cir.1985); *United States v. Brimberry,* 744 F.2d 580 (7th Cir.1984)). *See also Brown,* 550 So.2d at 143 (holding that the similar intent crime of solicitation does not require that the crime solicited actually be perpetrated, because "the offense of attempting to solicit is implicitly included within [solicitation statutes]."). "As long as his words or actions support the inference that he (1) sought to prevent or dissuade a potential witness from attending upon a trial or (2) attempted by threat of force to induce a person to withhold testimony," the defendant can be made to answer to the crime of tampering with a witness. *Boutchee,* 406 N.W.2d at 712 (citing *People v. Thomas,* 83 Cal.App.3d 511, 148 Cal.Rptr. 52, 54 (1978)).

[¶ 36.] Once Charger instructed Norman to place the phone call to Swimmer and relay the message inferring she should not testify against him, and after Hagans passed the message on to the person to whom it was intended for, the act of tampering with a witness was complete. *See Navarro v. State,* 810 S.W.2d 432, 437 (Tex.App.1991) (concluding "[t]he alleged offense of tampering with a witness was complete when the appellant offered and conferred and agreed to confer a benefit (money) to the witness in a manner calculated to cause false testimony."). The record is clear that Norman read to Hagans a message, written in Charger's handwrit-

ing, stating to the effect "if you testify in court you'll be arrested ... if you even try to contact the prosecutor, you'll be arrested.... If you show up in court, all I have to do is say your name and you'll be arrested." Moreover, Hagans recalled the message to also include an indication that if Swimmer did not testify, Charger would be left unprosecuted – "[h]e said that he's protected under the Shield Act, and that meant that any crime that's not pled in one year you can't be prosecuted for it even if it's a sexual abuse."

[¶ 37.] There is evidence in the record that Charger's message achieved his desired results in trying to persuade Swimmer not to testify against him in his upcoming criminal trial. Hagans testified that she relayed Charger's message directly to Swimmer approximately two hours after Norman's telephone call. Hagans' testified she explained the message to Swimmer, because she was "scared for her." When Swimmer heard the details of the message, she "looked scared" and "got tears in her eyes and she said she was scared." During her direct testimony at trial, Swimmer testified after hearing about the message she "felt fear," and perceived the telephone message from Charger "as a threat."

[¶ 38.] Although Charger claimed his warning was only directed at Robert Swimmer to warn him of potential prosecution, when Norman phoned Hagans, he asked only for "Jackie," not "Jackie *and* Robert," or "Jackie *or* Robert," or simply "Robert." Robert's name was never mentioned during the phone conversation.

 [¶ 39.] Moreover, the jury rejected his version of the facts in finding him guilty of witness tampering, which, as the factfinder, it was entitled to do. It is well settled that it is the function of the jury to determine credibility of witnesses. *State v. Raymond,* 540 N.W.2d 407, 409 (S.D.1995) (citing *State v. Svihl,* 490 N.W.2d 269, 274 (S.D.1992) (citing *State v. Battest,* 295 N.W.2d 739, 742 (S.D.1980))). "It is hornbook law that the credibility of a

witness and the weight to be given his testimony rests exclusively with the jury." *Id.* at 410 (citing *United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986) (quoting *United States v. Rosenberg,* 108 F.Supp. 798, 806 (S.D.N.Y.1952), *aff'd,* 200 F.2d 666 (2d Cir.1952))). "[T]he jury is the lie detector in the courtroom...." *Id.*

 [¶ 40.] We find that under the evidence in this record, Charger was guilty of the charged offense of witness tampering or guilty of nothing. A defendant in a criminal case is entitled to an instruction on his theory of the case only if there is evidence to support it. *State v. Pellegrino,* 1998 SD 39, ¶ 9, 577 N.W.2d 590, 594 (citing *State v. Helmer,* 1996 SD 31, ¶ 42, 545 N.W.2d 471, 478 (other citations omitted)). Therefore, a jury instruction on "attempt" would have been not only inappropriate, but also error.

[¶ 41.] The circuit court did not err in refusing to include an attempt instruction in this case. Affirmed.

[¶ 42.] MILLER, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 43.] SABERS, Justice, concurs specially.

SABERS, Justice (concurring specially).

[¶ 44.] I concur specially because, under the majority in *State v. Springer–Ertl,* 2000 SD 56, 610 N.W.2d 768, the trial court's refusal to instruct the jury on defendant's right of free speech would be plain and reversible error requiring a new trial.

[¶ 45.] Accordingly, I write specially to expressly overrule *Springer–Ertl.*