[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10978

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JONATHAN MARKOVICH,
DANIEL MARKOVICH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60020-WPD-1

_____

2                       Opinion of the Court                    22-10978

_____

No. 23-11835

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JONATHAN MARKOVICH,
DANIEL MARKOVICH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60020-WPD-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court abused its discretion by denying Jonathan Markovich and Daniel Markovich a new trial following their convictions for operating

fraudulent drug rehabilitation clinics. First, the Markoviches argue that the district court violated the Due Process Clause of the Fifth Amendment, *see* U.S. CONST. amend. V; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972), and the Confrontation Clause of the Sixth Amendment, *see* U.S. CONST. amend. VI, by denying their motion to compel the prosecution to obtain and disclose confidential medical records possessed by third parties. Second, they argue that the district court violated Federal Rules of Evidence 702 and 403 by admitting unreliable and confusing expert testimony about the clinics' medical and billing practices. Third, they argue that the district court abused its discretion by admitting lay summary testimony about medical and billing records. Fourth, Jonathan Markovich argues that his two bank-fraud counts were prejudicial. Fifth, the Markoviches argue that the district court abused its discretion by denying their motion for discovery, an evidentiary hearing, and for a new trial based on newly discovered evidence. Because the prosecution did not possess the requested records and the Markoviches do not know what the records contain; the expert's testimony was clear and reliable; the summary testimony was proper; Jonathan Markovich forfeited any challenge to the bank-fraud counts; and the newly discovered evidence is cumulative; we affirm the Markoviches' convictions.

## I. BACKGROUND

Jonathan Markovich and his brother Daniel Markovich ran two substance-abuse clinics in Florida. Compass Detox, LLC, provided

inpatient addiction treatment, and We Are Recovery, LLC, provided outpatient treatment.

The prosecution charged the Markoviches—along with six other individuals who helped own, operate, or provide services to the clinics—in a 35-count indictment. The indictment alleged that the Markoviches and their co-conspirators had engaged in fraudulent transactions on the clinics' behalf. The prosecution charged Jonathan with one count of conspiring to commit health-care fraud and wire fraud, *see* 18 U.S.C. § 1349; eight counts of health care fraud, *see id.* § 1347; one count of conspiring to pay and receive kickbacks, *see id.* § 371; one count of paying and offering kickbacks, *see id.* § 220(a)(2)(B); one count of soliciting and receiving kickbacks, *see id.* § 220(a)(1); one count of conspiring to commit money laundering, *see id.* § 1956(h); eight counts of money laundering, *see id.* §§ 1956(a)(1)(B)(i), 1957(a); and two counts of bank fraud, *see id.* § 1344(2). The prosecution charged Daniel with one count of conspiring to commit health-care fraud and wire fraud, *see id.* § 1349; five counts of health care fraud, *see id.* § 1347; one count of conspiring to pay and receive kickbacks, *see id.* § 371; and two counts of paying and offering kickbacks, *see id.* § 220(a)(2)(B).

The indictment alleged that the Markoviches paid patients to recruit other drug addicts with high-paying health insurance policies to receive "treatment" at the Markoviches' clinics. The recruiters were instructed to bribe addicts with promises of money, gifts, and drugs if they would admit themselves to the clinics for care. But instead of treating the patients, the Markoviches and their

associates used additional bribes to encourage the extended stay and readmission of these patients, all while billing their health insurers over $100 million for services that were either medically unnecessary or never provided. For example, the clinics prescribed dangerous combinations of medications with the sole purpose of getting patients high; billed for therapy sessions that patients did not attend; and bribed patients with money and drugs to continue receiving expensive treatments that they did not need. The Markoviches and their co-conspirators reaped about $30 million from the fraudulent claims. And Jonathan Markovich also obtained over $550,000 in loans on the clinics' behalf through the federal Paycheck Protection Program by certifying in his loan applications that the clinics were not engaged in any illegal activity.

During discovery, the prosecution obtained from third parties the medical and billing records for all the patients admitted to the Markoviches' clinics. These records revealed the treatment that patients received at the clinics and the bills submitted to the patients' insurance companies for that treatment. The prosecution disclosed these records to the Markoviches as part of its *Brady* obligation, and the district court admitted the records into evidence.

Records that reveal information about patients' substance-abuse treatment are confidential and protected from disclosure by the Public Health Service Act. *See* 42 U.S.C. § 290dd-2(a) (records of the identity or treatment of any patient relating to substance-abuse treatment are confidential). To obtain those records, the prosecution had to abide by strict confidentiality procedures.

6                    Opinion of the Court                  22-10978

Without patient consent, treatment records may be disclosed only if authorized by court order "after application showing good cause." *Id.* § 290dd-2(b)(2)(C). Only an "administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency" may apply for a court order to obtain patient records in connection with a criminal prosecution. 42 C.F.R. § 2.66(a)(1). If the court orders disclosure, the prosecution must shield the patients' identities and afford them an opportunity to respond. *Id.* § 2.66(b), (d). The prosecution obtained court orders allowing it to subpoena third-party banks and insurers for records of patients' treatment at the Markoviches' clinics. The prosecution disclosed these records to the Markoviches after it obtained protective orders from the magistrate judge and provided the patients with notice and an opportunity to respond.

The Markoviches moved before trial to compel the prosecution to obtain, and then disclose to the Markoviches, *additional* medical and billing records about the substance-abuse treatment that the patients received at *other* clinics. The Markoviches argued that this information was "important to obtain a complete picture of the patients' medical history." And they argued that because federal law permits only the prosecution to apply for access to these records, *id.* § 2.66(a)(1), the prosecution had a *Brady* obligation to seek them on the Markoviches' behalf. The district court denied the motion on the ground that the prosecution "does not have any [*Brady*] obligation to conduct an investigation for the defense." The Markoviches renewed their motion to compel several times during trial, and the district court denied the motion each time.

During a 22-day trial, the prosecution presented a robust case against the Markoviches. It introduced thousands of pages of medical and billing records. And it called 15 witnesses, including former clinic patients, a medical expert, a forensic accountant, a certified fraud examiner, and two of the Markoviches' convicted co-conspirators.

Mario Kustura was one of the prosecution's lead witnesses and one of the Markoviches' convicted co-conspirators. The clinics had employed Kustura, a former patient, to recruit new patients. Kustura testified that the Markoviches permitted him to use drugs and money to lure drug addicts with high-paying insurance policies to the clinics. He also discussed his own battle with drug addiction and relapse but testified that he had "been clean" for "[a]bout nine months."

Defense counsel cross-examined Kustura at length about his history of lying, and Kustura readily confessed his dishonesty:

> Q. Mr. Kustura, you would agree with me, would you not, that you are, in fact, a liar?
>
> A. I have lied at times, yes.
>
> Q. Yeah. You're someone who tells lies, right? Right?
>
> A. At times.
>
> Q. You've been telling lies for years, right?
>
> A. At times.
>
> Q. Not just a few lies. A lot of lies, right?

A. Yes.

Q. You've been telling lies to get money, right?

A. Yes.

Q. Lies to get drugs, right?

A. Yes.

Q. Lies to your family, right?

A. Yes.

Q. Lies to your friends, right?

A. Yes.

Q. Lies to women, right?

A. Yes.

Q. To business associates, right?

A. Yes.

Q. You are, in fact, are you not, someone who tells lies?

A. Yes, I am.

Dr. Kelly J. Clark was another prosecution witness. The prosecution retained Clark as an expert in substance-abuse treatment. Clark has extensive academic credentials and experience in substance-abuse treatment and billing. She told the jury that in preparation for her testimony, the prosecution provided her, and she extensively reviewed, the medical and billing records for "12 specific patients" who were treated at the Markoviches' clinics. She was also given access to the records for the clinics' other patients, and she

testified that she reviewed "at least a dozen" of those patients' records "at random" to ensure that the records the prosecution provided her were not outliers. But Clark made clear that she "did not review" the records for "each and every patient."

Clark described improprieties that she identified in her review of the patient files. For example, she testified that the Markoviches' clinics billed insurers for excessive and unnecessary urine tests, as well as for therapy sessions that patients did not attend. And she testified that the clinics improperly prescribed patients, and billed insurers for, large quantities of controlled substances that provided no therapeutic benefit and served only to intoxicate the patients.

Clark stressed that her opinions were based on the limited records that she personally reviewed and did not necessarily reflect the clinics' practices for all patients. She testified that she saw evidence of drug test tampering in "the limited amount of patient files [she] reviewed"; that based on her review of "the[] charts," the clinics "absolutely drugged" patients; that in the records that "[she] looked at," patients did not meet the criteria for detox treatment; and that "[b]ased on [her] review of the files," the clinics' billing practices "also w[ere] a problem."

Defense counsel cross-examined Clark about the limited scope of her review. Clark conceded that she had reviewed "less than 1 percent of total patients"; that she did not ask the prosecution "for any patient files of patients who, in fact, are clean and sober today"; and that she could not recall the names of any of the patients whose files she reviewed at random.

The district court instructed the jury about how to evaluate witness credibility generally and expert testimony specifically. The district court instructed the jurors that they "may believe or disbelieve any witness, in whole or in part" and must treat an expert's testimony like "any other witness's testimony" and "decide for [themselves]" whether to accept the expert's opinions.

The prosecution also called Melissa Parks, a certified fraud examiner, to testify as a lay summary witness. The prosecution retained Parks to review a sample of the medical records, billing records, emails, and other documents that had been admitted into evidence and then to summarize that evidence for the jury. Parks began by testifying about the scope of her review. She explained that she had access to the medical and billing records for all the approximately 1,000 patients who attended the Markoviches' clinics during the relevant timeframe, but that she reviewed the files for only 125—about 12 percent—of the patients. She testified that she had "randomly selected" most of the patients in her sample using a "random number generator," but the prosecution selected "a few patients" for her to include in her review. Parks then testified about trends she observed in the patient files that she reviewed, including patients' drug use while at the clinics, patients' frequent absences at therapy sessions, patients' repeated admissions to the clinics, and the Markoviches' alterations of patient files.

Like Clark, Parks emphasized that her summary was based on the limited sample of patients whose records she reviewed. She testified, for instance, that her "sample analysis" of the clinics' group

therapy notes was based on "the 125 patients that [she] reviewed," and that the therapy attendance rates she summarized were based on her review of that same "sample population." During cross-examination, Parks conceded that the scope of her review was limited and that she did not review every single patient file. And the district court instructed the jurors that they should accord summary testimony "no greater consideration" than the record evidence on which it was based; that they must determine whether summary testimony "correctly presented the information contained in the documents" on which it was based; and that they must decide for themselves "what, if any, weight" to give summary testimony.

The district court dismissed three of Daniel Markovich's health-care fraud counts before submitting the case to the jury, and the jury convicted the Markoviches on all remaining counts. The Markoviches sought a new trial, challenging the denial of their motion to compel and the admission of Clark's and Parks's testimony. The district court denied the motion. The Markoviches appealed their convictions.

While their appeal was pending, the Markoviches filed another motion for a new trial, this time based on "newly discovered evidence." *See* FED. R. CRIM P. 33(b)(1). The prosecution had received and sent the Markoviches an incident report from the Broward Sheriff's Office. The report revealed that two days before Kustura testified for the prosecution, Kustura's mother called paramedics to her and Kustura's hotel room and reported that Kustura was

"not breathing." When the paramedics arrived, Kustura was "up washing his face" and "refused" to be taken to the emergency room. Bodycam footage of the incident records Kustura telling paramedics that he had been drinking alcohol but had not taken illegal drugs. And a Hampton Inn call log states that shortly after the 9-1-1 call, there was a two-minute phone call from Kustura and his mother's hotel room to a Florida phone number.

The Markoviches requested discovery and an evidentiary hearing to determine whether Kustura overdosed on drugs on the night of the 9-1-1 call and, if so, whether he had called and told someone from the prosecutor's office about it. The Markoviches reasoned that this evidence, if discovered, would require a new trial because it would prove that Kustura falsely testified at trial two days later when he said that he had "been clean" from illegal drugs for "[a]bout nine months," and it would prove that the prosecution knew and suppressed that fact.

The prosecution opposed the motion for discovery and a new trial. The prosecution argued that the emergency dispatch to Kustura's hotel room did not prove that he had used illegal drugs. The prosecution argued that, to the contrary, Kustura's many negative drug tests both before and after the incident proved that he had not. The prosecution insisted that none of its agents knew of the emergency visit until after trial and that the Florida phone number listed on the hotel call log did "not belong to a member of the prosecution team." In any event, evidence that Kustura had taken drugs the night of the incident and falsely testified about his

sobriety, the prosecution argued, would be "weak, cumulative impeachment" evidence that could not warrant a new trial.

The district court denied the motion. It found "no indication" that Kustura had overdosed on drugs or that the prosecution knew about the 9-1-1 call when he testified. And it found that even if he had overdosed and lied about it, that evidence "would have been merely cumulative," "merely impeaching," and "would not have affected the ultimate outcome" of the trial. The Markoviches appealed the denial of their motion for discovery and a new trial. We consolidated the appeal with the appeal from their convictions.

## II. STANDARD OF REVIEW

We review for abuse of discretion the denial of a motion to compel discovery, *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020), the admission of lay and expert testimony, *United States v. Crabtree*, 878 F.3d 1274, 1287 (11th Cir. 2018), and the denial of a motion for a new trial based on newly discovered evidence, *United States v. Barsoum*, 763 F.3d 1321, 1341 (11th Cir. 2014).

## III. DISCUSSION

We divide our discussion into five parts. First, we explain that the district court did not abuse its discretion by denying the Markoviches' motion to compel discovery. Second, we explain that the district court did not abuse its discretion by admitting Clark's expert testimony. Third, we explain that the district court did not abuse its discretion by admitting Parks's lay summary testimony. Fourth, we explain that Jonathan Markovich forfeited any challenge to his bank-fraud counts. Fifth, we explain that the district court

did not abuse its discretion by denying the Markoviches' motion for post-trial discovery and a new trial based on newly discovered evidence.

### A.  The District Court Did Not Abuse its Discretion by Denying the Markoviches' Motion to Compel.

The Markoviches argue that the district court abused its discretion by denying their motion to compel discovery of confidential treatment records. The Markoviches acknowledge that the prosecution produced records pertaining to the treatment of patients at the Markoviches' clinics. But they say that the prosecution must also obtain on their behalf records pertaining to the treatment that these patients received at *other* addiction clinics. Although the Markoviches do not know what those records would reveal, they argue that because the records *might* contain impeachment information, the refusal to require the prosecution to help the Markoviches retrieve those records violated their right to due process under *Brady* and *Giglio* and their right to confrontation under the Sixth Amendment. We disagree.

The denial of the motion to compel did not violate the Markoviches' right to due process. *See* U.S. CONST. amend V. *Brady* requires the prosecution to disclose favorable evidence to the defense, but that requirement "applies only to information *possessed* by the prosecut[ion]." *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) (emphasis added) (citation and internal quotation marks omitted). And the Markoviches admit that the prosecution

22-10978                Opinion of the Court                15

never possessed the requested patient records. That admission dooms their *Brady* claim.

The Markoviches ask us to excuse *Brady*'s possession element for fairness reasons: because the prosecution was the only party authorized to apply for a court order permitting the confidential records' disclosure, *see* 42 C.F.R. § 2.66(a)(1), the Markoviches maintain that we should require the prosecution to pursue the records on their behalf. We must decline the invitation.

This Court has long held that although "'*Brady* requires the government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the government to *seek out* such evidence.'" *United States v. Luis-Gonzalez*, 719 F.2d 1539, 1548 (11th Cir. 1983) (quoting *United States v. Walker*, 559 F.2d 365, 373 (5th Cir. 1977)). In other words, the Due Process Clause does not allow the prosecution to hide potential evidence of innocence, but it does not require the prosecution to conduct fishing expeditions for the defense.

Nor did the denial of the motion to compel violate the Confrontation Clause. *See* U.S. CONST. amend. VI. The Markoviches argue that their inability to access the patient records prevented them from "fully" cross-examining the prosecution's witnesses. But the Confrontation Clause entitles a defendant "only to an opportunity for effective cross-examination" at trial, *United States v. Ochoa*, 941 F.3d 1074, 1094 (11th Cir. 2019) (citation and internal quotation marks omitted)—it does not confer "the power to require the pretrial disclosure of all information that might be potentially useful

in contradicting unfavorable testimony," *United States v. Osmakac*, 868 F.3d 937, 956 (11th Cir. 2017). A defendant is not deprived of his right to confront the witness against him unless "a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994). Because the Markoviches do not know what the patient records would reveal, they cannot establish that the records contain impeachment information, let alone information that would have given the jury "a significantly different impression of the witness[es]' credibility." *See id.*

### B. *The District Court Did Not Abuse its Discretion by Admitting Clark's Expert Testimony.*

The Markoviches next challenge the admission of Clark's expert testimony. They argue that its admission violated Federal Rules of Evidence 702 and 403. It violated neither.

### 1.  The Admission of Clark's Testimony Did Not Violate Rule 702.

Because Clark was admitted as an expert, her testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Expert testimony is admissible if its proponent establishes that (1) the expert is "qualified" to testify about the subject, (2) the "methodology" by which the expert reaches his conclusions is "sufficiently reliable" under *Daubert,* and (3) the testimony will help the factfinder understand the evidence or determine a fact in issue. *City of Tuscaloosa v. Harcros*

*Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998) (first citing FED. R. EVID. 702; and then citing *Daubert*, 509 U.S. at 589). The Markoviches do not dispute that Clark's education and experience qualified her to testify about substance-abuse treatment. Nor do they dispute that Clark's testimony was helpful to the jury.

The Markoviches argue only that Clark's testimony about the clinics' practices was unreliable because it was based on her review of the records for only a small percentage (around one percent) of the clinics' patients and because she inappropriately attributed her findings to "the entire patient population." The district court has "considerable leeway" to make reliability determinations, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) (citation and internal quotation marks omitted), and we will affirm unless its decision is "manifestly erroneous," *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (citation and internal quotation marks omitted).

The admission of Clark's testimony was not manifestly erroneous because Clark's methods and opinions were reliable. Clark testified—based on her unquestioned experience and education in substance-abuse treatment and her in-depth review of a sample of patients' records—about specific instances of misconduct at the Markoviches' clinics. The records on which her opinions were based, as well as the records for the clinics' other patients, were authenticated, admitted into evidence without objection, and subject to the jury's independent review. The Markoviches' objections "to the inadequacies of [Clark's] study" attack "the weight of the

evidence," not its admissibility. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation and internal quotation marks omitted).

Clark never told the jury that her findings were representative of the "entire patient population." To the contrary, she consistently limited the scope of her opinions to the small subset of patients whose records she reviewed. Defense counsel explored the scope of Clark's review with "[v]igorous cross-examination," and the district court gave the jury "careful instruction[s]" about "the burden of proof," how to evaluate expert testimony, and how to measure witness credibility more generally. *See Daubert*, 509 U.S. at 596. These devices, the Supreme Court tells us, are the "appropriate means of attacking shaky but admissible evidence." *Id.*; *accord Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001).

### 2.  The Admission of Clark's Testimony Did Not Violate Rule 403.

The Markoviches argue that even if Clark's testimony satisfied Rule 702 and *Daubert*, "she still should have been stricken as a witness under Rule 403." Federal Rule of Evidence 403 permits the district court to exclude evidence whose "probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Markoviches maintain that the probative value of Clark's testimony was substantially outweighed by "the potential to mislead or confuse" the jury because Clark's testimony was "the foundation upon which the

government's case was built" and because expert testimony might be assigned "talismanic significance in the eyes of lay jurors." We disagree.

The district court did not abuse its discretion because there was nothing confusing or misleading about Clark's testimony. Clark made clear that her opinions about the clinics' practices were based on, and limited to, her review of a small subset of patients' records. And those records, along with the records of the clinics' other patients, were admitted into evidence without objection. The Markoviches' contention that Clark's testimony was "the foundation" of the prosecution's case is defeated by their own correct observation that the Markoviches' co-conspirators "were the 'star' government witnesses" at trial. Last, the risk that the jury would accord Clark's testimony undue weight was mitigated by the limiting instruction, which we presume that the jury followed. *See United States v. Annamalai*, 939 F.3d 1216, 1224 (11th Cir. 2019).

### C.  *The District Court Did Not Abuse its Discretion by Admitting Parks's Lay Summary Testimony.*

The Markoviches similarly argue that the admission of Parks's lay "summary testimony" was an abuse of discretion because Parks reviewed only a small subset of patients' records yet attributed her findings to all the clinics' patients. Federal Rule of Evidence 1006 provides that summary evidence is admissible to prove the contents of voluminous records that cannot be conveniently examined in court. Summaries are admissible so long as they are "supported by evidence in the record." *United States v. Maurya*, 25 F.4th 829, 840

(11th Cir. 2022) (citation and internal quotation marks omitted). Summary testimony need not summarize *all* the records at issue, but may be based on a mere subset, provided that the testimony does not purport to represent "all the evidence." *See Flemister v. United States*, 260 F.2d 513, 517 (5th Cir. 1958).

The district court acted well within its discretion by allowing Parks to summarize the records of about 12 percent of the clinics' approximately 1,000 patients. There is no evidence that Parks's testimony "in any way misled" the jury. *United States v. Daniels*, 986 F.2d 451, 456 (11th Cir. 1993), *withdrawn and superseded in part on other grounds on reh'g*, 5 F.3d 495. Parks "clearly explained" to the jury that her summary reflected only the patients whose files she reviewed—not the entire patient population—and defense counsel cross-examined Parks about the limitations of her summary. *See id.* Moreover, all patients' records were "before the jury in the form of documentary evidence," *United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992), so the jury could decide for itself whether Parks accurately summarized that evidence. Last, the district court gave a "cautionary instruction[]" about the use of summary testimony, and "we presume that the jury followed" that instruction. *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011).

### D. Jonathan Markovich Forfeited Any Challenge to His Bank-Fraud Counts.

Jonathan Markovich argues next that his two bank-fraud counts were "prejudicial" and "should not have been countenanced." But he does not explain the legal basis of this conclusory

argument, and he cites no legal authority to support it. So Jonathan forfeited any challenge to the bank-fraud charges. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("An appellant forfeits an issue when she raises it in a perfunctory manner without supporting arguments and authority." (citation and internal quotation marks omitted)).

### E. The District Court Did Not Abuse Its Discretion by Denying Post-Trial Discovery.

Last, the Markoviches challenge the denial of their motion for discovery to support their motion for a new trial based on newly discovered evidence. They argue that further investigation into the 9-1-1 call to Kustura's hotel room might prove that Kustura used drugs two days before testifying that he had "been clean" for "[a]bout nine months," and that further investigation into the call from Kustura's room to a Florida phone number might prove that someone from the prosecution team knew and suppressed that fact. The Markoviches argue that the district court abused its discretion by denying them a new trial without affording them an opportunity to develop this evidence. We disagree.

"This Court has repeatedly stated that motions for new trial based on newly discovered evidence are highly disfavored." *United States v. Stahlman*, 934 F.3d 1199, 1230 (11th Cir. 2019) (citation and internal quotation marks omitted). To succeed, the defendant must prove that the evidence was discovered after trial, the defendant's failure to discover the evidence was not due to a lack of diligence, the evidence "is not merely cumulative or impeaching," the

evidence is "material," and the evidence would "probably produce a different result" at trial. *Id.* "Failure to meet any one of these elements will defeat a motion for a new trial." *United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995).

The Markoviches concede that evidence that "Kustura lied about whether he had been clean for the past nine months" would be "'cumulative' given his admitted history of deceit." But they argue that because Kustura was an important witness, we cannot say that this new evidence about his potential dishonesty would be "*merely*" cumulative. We disagree.

The importance of the witness to whom newly discovered evidence pertains is relevant both to whether the evidence is "material" and whether it would "probably produce a different result" at trial. *See Stahlman*, 934 F.3d at 1230. But it is not relevant to the separate requirement that the evidence not be cumulative. And this impeachment evidence is undeniably cumulative.

The district court was not required to permit additional discovery or hold an evidentiary hearing before denying the motion for new trial. "The law of this circuit is well established that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). And the Markoviches' motion was "particularly suitable for ruling" without discovery. *Id.* Because the district judge who denied the motion "presided over this case since its inception" and "heard and evaluated the testimony of the witness[] whose credibility is now challenged," he was "well qualified" to decide the

motion on the pleadings and exhibits alone. *Id.* at 1373–74. Indeed, even if discovery were to reveal what the Markoviches hope it would—that Kustura lied at trial about his months-long sobriety—that evidence could not support a new trial because it is cumulative of Kustura's admitted dishonesty. *See Stahlman*, 934 F.3d at 1230.

## IV. CONCLUSION

We **AFFIRM** the Markoviches' convictions.